**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **ORIZON AEROSTRUCTURES, LLC,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **ORIZON MANAGEMENT INCENTIVE, LLC,** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| **JUSTIN J. CRUMLEY,** | ) |
| **Serve at:** | ) |
| 15801 E. Limerick Street | ) |
| Wichita, KS 67230 | ) |
| | ) |
| **and** | ) Case No. |
| | ) |
| **VALENCE SURFACE TECHNOLOGIES,** | ) |
| **LLC,** | ) |
| **Serve at:** | ) |
| CT Corporations System | ) |
| 112 SW 7th Street, Suite C | ) |
| Topeka, KS 66603 | ) |
| | ) |
| **CHROME PLUS INTERNATIONAL, LLC** | ) |
| **d/b/a Valence Surface Technologies,** | ) |
| **Serve at:** | ) |
| CT Corporations System | ) |
| 112 SW 7th Street, Suite C | ) |
| Topeka, KS 66603 | ) |
| | ) |
| Defendants. | ) |

---

**VERIFIED COMPLAINT**
**FOR INJUNCTIVE RELIEF AND DAMAGES**

---

COMES NOW Plaintiffs, Orizon Aerostructures, LLC ("Orizon") and Orizon

Management Incentive, LLC ("OMI") (Orizon and OMI collectively, "Plaintiffs"), by and through

the undersigned counsel and for their Verified Complaint for Injunctive Relief and Damages

against Defendants, Justin J. Crumley ("Crumley"), Valence Surface Technologies, LLC ("Valence") and Chrome Plus International, LLC ("Chrome Plus") (Crumley, Valence and Chrome Plus collectively, "Defendants"), states and alleges as follows:

## NATURE OF THIS ACTION

1.    Crumley was formerly employed by Orizon as its General Manager and Vice President of Operations.  As a member of Orizon's key management, Crumley had access to confidential, proprietary, and trade secret information relating to Orizon's operations, productivity, business and marketing plans, customers, and financial performance and projections.  Crumley was among those in Orizon's key management group that had an ownership interest in the company, and as such, he agreed to a Confidentiality and Non-compete Agreement.

2.    Crumley unexpectedly resigned effective January 27, 2023, stating he had not decided on his future employment but that he had no intent to compete against Orizon.

3.    Orizon recently learned that Crumley's statements were not true. On February 7, 2023, Valence, a direct competitor of Orizon, announced that it had hired Crumley in a position identical to his position with Orizon, performing the same duties and responsibilities he did for Orizon.  Crumley's employment with Valence is in direct violation of the terms of his Confidentiality and Non-compete Agreement.  In addition, given his position with Valence, Crumley has misappropriated or threatened to misappropriate its confidential, proprietary, and trade secret information.

4.    On February 9, 2023, Orizon, through counsel, contacted Crumley and Valence demanding that Crumley comply with the Confidentiality and Non-compete Agreement and that Valence cease its interference with the Agreement.  Crumley's and Valence's wrongful conduct continues.

FP 46396205.2

5.    Consequently, Orizon brings this action to enjoin Crumley from violating the Confidentiality and Non-compete Agreement, to enjoin Valence from interfering with the Agreement and for other damages and relief.

## JURISDICTION AND VENUE

6.    Count II of this Complaint presents a federal question under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836(b) ("DTSA"), which specifically provides for original jurisdiction in this Court pursuant to 18 U.S.C. 1836(c). Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Counts I and III-VII present claims under state law that are so related to the DTSA claims that they form part of the same case or controversy, and therefore, the Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

7.    Plaintiff Orizon is a limited liability company organized under the laws of the state of Delaware, with its principal place of business and corporate headquarters located at 1200 Main Street, Suite 4000, Kansas City, Missouri 64105.

8.    Plaintiff OMI is a limited liability corporation organized under the laws of the state of Delaware, with its principal place of business located at 1200 Main Street, Suite 4000, Kansas City, Missouri 64105.

9.    Defendant Crumley is an individual residing and domiciled at 15801 E. Limerick Street, Wichita, KS 67230, and is therefore a citizen of the state of Kansas.

10.    Defendant Valence is a Texas limited liability company organized under the laws of the state of Texas, with its principal place of business located at 1790 Hughes Landing Blvd., Suite 300, The Woodlands, Texas 77380.  Valence owns and operates a facility at 3939 W. 29th St. South, Wichita, KS 67217.

FP 46396205.2

11.     This Court has personal jurisdiction over Valence under K.S.A. § 60-308(b) because it transacts business in the state of Kansas and because it has committed tortious acts in the state of Kansas.

12.     Defendant Chrome Plus, which does business as Valence Surface Technology, is a limited liability corporation organized under the laws of the state of Delaware, with its principal place of business located at 1790 Hughes Landing Blvd., Suite 300, The Woodlands, Texas 77380. Chrome Plus owns and operates a facility in at 3939 W. 29th St. South, Wichita, KS 67217. Valence owns and operates Chrome Plus. Chrome Plus and Valence are collectively referred to herein as Valence.

13.     This Court has personal jurisdiction over Chrome Plus under K.S.A. § 60-308(b) because it transacts business in the state of Kansas and because it has committed tortious acts in the state of Kansas.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because the events giving rise to the claims in this action occurred in substantial part in this District.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

### ORIZON AEROSTRUCTURES, LLC

15.     Orizon is an aerostructures technology company that manufactures, sells and distributes parts for airplanes, fighter planes, helicopters, rockets and satellites for use in the commercial airline, private or business airplane, the United States military defense and private space technology industries.

16.     Orizon competes for business throughout the United States.  Its customers include Boeing, Spirit AeroSystems, Lockheed Martin, Sikorsky, Northrop Grumman, Gulfstream, HondaJet, Cessna and Blue Origin.  Orizon manufactures parts for familiar aircraft such as the

4

Boeing 737, the Boeing F-15 and F-18 fighter jets, the Lockheed Martin F-35 stealth fighter jet, the Sikorsky Black Hawk military helicopter and the Blue Origin New Shepard rocket system.

17.    Orizon was founded in 2016.  Orizon's vision was to establish an integrated business that would encompass all facets of the manufacturing process for aerostructure parts.

18.    As the name implies, "aerostructures" refers to the structure of an aircraft, such as parts for the fuselage frame, bulkheads, bases and frames for the engines, and thrust reversers components for turbine engines, etc.  Orizon manufactures, sells and distributes these aerostructure parts for its customers.

19.    The process of manufacturing aerostructure parts involves three steps or processes: (i) machining or fabricating a part from raw material, typically either aluminum or various hard metals including stainless steel and titanium; (ii) processing the part; and (iii) assembling various parts into larger components.

20.    Orizon operates and maintains facilities for machining and fabricating aerostructure parts in Olathe, Kansas, Fenton, Missouri and Grove, Oklahoma.

21.    At its inception, Orizon did not have a processing facility, but its business plan from the outset was to build one.  Crumley, who had previously worked with Orizon's founders at another aerostructures company, was hired by Orizon shortly after its inception to manage and oversee the building of a state-of-the-art processing facility in Chanute, Kansas, and to manage its operations.

22.    After the processing facility was finished, Orizon completed its vision of an integrated aerostructure parts manufacture by building an assembly facility at its Chanute complex, which Crumley was also responsible for managing.

**ORIZON MANAGEMENT INCENTIVE, LLC**

23.     OMI owns an interest in Orizon.  OMI was established in order to attract and retain key management personnel to participate in the ownership of Orizon.  Those key management personnel who are invited to participate in OMI develop and maintain Orizon's unique relationships with its customers and have intimate knowledge of Orizon's confidential, proprietary information and trade secrets.

24.     Those key management personnel who become members of OMI must agree to the terms of OMI's Operating Agreement.  *See* Exhibit 1, attached hereto.  In addition, those that become members of OMI must agree to the Confidentiality, Non-compete and Intellectual Property Agreement, which is incorporated into OMI's Operating Agreement.  *Id*. at 28-31.  The terms of the Confidentiality and Non-compete Agreement are discussed more fully below.

## CRUMLEY'S EMPLOYMENT WITH ORIZON

25.     Crumley was hired by Orizon in or about June 2016 to be its General Manager of its yet-to-be-built processing facility in Chanute, Kansas.

26.     Processing an aerostructure part, which occurs after it is created from the raw material, is critical to the manufacturing process.  Processing involves several steps including masking the part, non-destructive, penetrant testing for raw material or manufacturing defects, corrosion protection, priming and painting, and demasking.

27.     Initially, Crumley's primary responsibility was to manage and oversee the building of the Chanute processing facility.  Although Crumley had experience working in a processing facility, he had never built such a facility from the ground up.

28.     To accomplish this responsibility, Orizon provided Crumley all of the necessary resources to build a state-of-the-art processing facility as Orizon envisioned.  Crumley worked with architects, engineers and other consultants on the design of the structure to ensure that the facility met the unique specifications required for a processing facility.

6

29.     In addition to the structure itself, Crumley was responsible for the interior design and layout of the facility.  Orizon provided Crumley all of the necessary resources, including consultants and vendors, to meet this responsibility.  Crumley was tasked with developing the interior design and layout of the facility to ensure that each step of the processing operation could be performed with the highest degree of efficiency and quality.

30.     Under Crumley's management, Orizon invested more than $17 million in the Chanute processing facility.  The unique design and layout of Orizon's processing facility and the efficiencies built into it are highly proprietary and confidential to Orizon and provide Orizon an advantage over its competitors.

31.     The Chanute processing facility was completed in or about July 2017, and Crumley's responsibility transitioned from building the facility to managing its operations.

32.     As the General Manager of Orizon's processing facility, Crumley was responsible for all facets of operating and maintaining the processing facility, including the following:

- overall financial performance and productivity of the facility;

- achieving monthly and yearly sales and profitability goals;

- developing and maintaining relationships with Orizon's vendors;

- managing cost reduction efforts and process improvements for the facility to ensure efficiency of operations and cost effectiveness,

- establishing procedures and strategies for maintaining the highest safety and quality standards;

- developing and implementing marketing plans; and

- developing and fostering relationships with Orizon's customers.

33.     Crumley was among the first associates invited to become a member of OIM. Exhibit 1.  On December 1, 2018, Crumley and IOM executed a Joinder to Operating Agreement of OIM, which provides, in relevant part, as follows:

This Joinder to Operating Agreement of Orizon Management Incentive, LLC (this "Joinder Agreement"), dated as of December 1, 2018, is made pursuant to Section 8 of that certain Operating Agreement (the "Operating Agreement"), dated December 29, 2017, by and among Orizon Management Incentive, LLC (the "LLC") and the persons executing the Operating Agreement as Members of the LLC. Capitalized terms used but not defined herein shall have the meanings assigned to them in the Operating Agreement. A copy of the Operating Agreement is attached as Attachment 1 hereto.

*By executing and delivering this Joinder Agreement, the undersigned, as provided in Section 8 of the Operating Agreement, hereby agrees to become a party to, to be bound by, and to comply with the provisions of, the Operating Agreement as a Member of the LLC in the same manner as if the undersigned were an original signatory to the Operating Agreement.*

*Id.* at pp. 2-5 (emphasis added). Pursuant to the Joinder Agreement, Crumley made his initial capital contribution of $5,000. *Id.* at p. 27.

34.     Under OMI's Operating Agreement, Crumley agreed as follows:

By executing this Operating Agreement and in consideration for each Member's receipt and retention of its Member's Interest, each Member agrees to be bound by the confidentiality, non-compete and intellectual property covenants and agreements set forth on **Exhibit B** hereof (the "**Confidentiality and Non-compete Agreement**"), which are hereby incorporated in this Agreement.

*Id.* at p. 7, ¶ 1.6.

35.     The Confidentiality and Non-compete Agreement provides that it is entered into for the benefit of OIM and its parents, subsidiaries or affiliates, which includes Orizon. *Id.* at p. 28.

36.     Under the Confidentiality and Non-compete Agreement, Crumley agreed that, while he was a member of OMI and continuing until three (3) after he was no longer a member of OMI, he would not:

a.     (i) induce or attempt to induce any employee or independent contractor of Orizon to quit employment or engagement with Orizon; (ii) otherwise interfere with or disrupt Orizon 's relationship with its employees or independent contractors; (iii) solicit, entice, or hire away any employee or independent contractor of Orizon; or (iv) hire or engage any employee or independent contractor of Orizon or any former employee or independent contractor of Orizon whose employment or engagement

with Orizon ceased less than one (1) year before such Member's Ownership
Termination Date;

b.      (i) divert or attempt to divert (by solicitation, diversion or otherwise) from
Orizon any business with any customer, prospective customer or account; (ii)
accept the business of any customer, prospective customer or account of Orizon,
whether solicited or not solicited by such Member, or (iii) make any disparaging
remarks or statements about Orizon to any third parties (including, without
limitation, any such remarks or statements to any customer, employee, salesperson,
distributor, supplier, vendor, manufacturer, representative, agent, jobber or other
person transacting business with Orizon); or

c.      engage in, assist or have any active interest in a business located or
operating anywhere in (x) the United States, (y) the States of Missouri, Kansas and
Oklahoma or (z) within a three hundred (300) mile radius of any office or facility
owned, leased or operated by Orizon that, directly or indirectly: (i) manufactures,
markets, sells or distributes aerospace products, including aerostructure parts and
components; or (ii) otherwise competes with the business conducted by Orizon on
the date hereof or by Orizon at any time during the term of this covenant.
Notwithstanding the foregoing, nothing in this Restrictive Covenant Agreement
shall prohibit a Member from owning one percent (1%) or less of the outstanding
stock of any publicly traded company.

*Id*. at p. 28, ¶ 1(a), (b) and (c).

37.     With respect to the geographical scope of the non-compete provision, the

Confidentiality and Non-compete Agreement further provides as follows:

the parties intend that the covenants and agreements contained in parts (x), (y) and
(z) of Section I (c) shall be deemed to be a series of separate covenants and
agreements, one for each of the United States, the States of Missouri, Kansas and
Oklahoma and within a three hundred (300) mile radius of any office or facility
owned, leased or operated by Orizon. If, in any legal proceeding, a court or
arbitrator shall refuse to enforce all the separate covenants and agreements deemed
to be included in parts (x), (y) and (z) of Section 1(c), it is the intention of the parties
hereto that the covenants and agreements which, if eliminated, would permit the
remaining separate covenants and agreements to be enforced in such proceeding
shall, for the purpose of such proceeding, be deemed eliminated from the provisions
of parts (x), (y) and (z) of Section l(c).

*Id*. at p. 30, ¶ 4.

38.     Under the Confidentiality and Non-compete Agreement, Crumley also agreed as

follows:

<u>Confidentiality Obligations.</u> Each Member further acknowledges and recognizes that the customer lists, prospective customers, and other customer information, suppliers, prices, selling techniques, methods of operation, technology, business processes and know-how, management techniques, administrative procedures, sales, contracts, future or present business plans, including acquisitions or future service offerings, marketing data, unpublished advertising or promotional matter, techniques, sales forecasts or other financial information and any other information as to the business affairs of Orizon (collectively, "Confidential Information") are: (a) valuable and unique assets of Orizon's business, and (b) confidential and valuable trade and business secrets belonging to Orizon. In addition, Member acknowledges and recognizes that Orizon and its customers and suppliers have a contractual relationship, which is a valuable asset belonging to Orizon. Member, therefore, agrees that so long as Member owns any Interest in the LLC and for a period of five (5) years after such Member's Ownership Termination Date, regardless of the reason, Member will not disclose or use (other than for purposes related to Member's official duties for Orizon) at any time any such Confidential Information of Orizon of which Member becomes informed of or had access to during Member's employment or ownership of the Interest.

*Id*. at pp. 28-29.

39.    In February 2021, Crumley was promoted to Vice President of Operations of Orizon's Chanute facility.  As the Vice President of Operations, Crumley maintained his duties and responsibilities over the processing operations, and he was also responsible for operating and maintaining its assembly operations.  Crumley's duties and responsibilities over the assembly operations were the same as his duties and responsibilities over the processing operations as described above.

40.    Throughout his employment, Crumley continuously had access to and used Orizon's confidential, proprietary information and trade secrets in addition to those described above.

41.    Crumley's responsibilities included developing and fostering relationships with Orizon's customers.  Throughout is employment, Crumley fostered and maintained Orizon's goodwill with its customer and prospective customers.  Crumley regularly communicated with Orizon's customers and their representatives on a variety of matters, including contract issues,

customer part specifications, delivery schedules, quality control, and Orizon's operations. Crumley was also involved in the negotiation of contracts with customers.

42.     In addition, Orizon provided Crumley access to detailed information regarding its customers, including the terms of Orizon's contracts with its customers, delivery schedules, pricing, customer gross margins and customer satisfaction information.  In addition, Crumley had access to and participated in the development of customer specific marketing plans and strategies and future service offerings.

43.     Many of Orizon's contracts with its customers extend out three or more years and contain provisions for price adjustments based on specific criteria.  Crumley had access to this highly, confidential information.

44.     Crumley also had access to detailed information regarding Orizon's operations in Chanute, including supplier information, supply chain management, labor and material costs, operating and production costs, cost reduction plans, financial performance and productivity information, process improvement plans, business plans, and marketing and sales strategies/plans.

45.     Orizon, under Crumley's management, continued to make substantial investments in its processing facility to increase its efficiencies.  For instance, Orizon innovated unique processes for masking parts and testing and measuring aerostructure parts to ensure that they meet the customer's specifications.  These methodologies are highly proprietary and confidential to Orizon and provide Orizon an advantage over its competitors.

46.     As part of Orizon's key management and a member of IOM, Crumley was made privy to highly confidential, proprietary information regarding Orizon's business beyond just its Chanute facility.  For instance, Crumley attended meetings of Orizon's Management Leadership Group.  Most recently, Crumley attended one such meeting on December 8, 2022, just weeks

11

before he announced his resignation, during which he was provided detailed information regarding the following: (i) actual and projected revenues and sales by customer through 2026; (ii) actual and projected gross margins through 2026; (iii) actual and projected balance sheets through 2026; (iv) actual and projected valuations of Orizon's business through 2026; (iv) business plans for increasing sales and profitability; and (v) customer satisfaction ratings based on quality and delivery.

47.     Orizon at all times deemed and treated its confidential information and trade secrets as such and put in place policies and processes to protect and secure such information, including the following: (a) implementing policies and protocols; (b) security to protect against the disclosure of sensitive materials to third parties or Orizon employees who do not have a business need to access the materials; (c) IT security measures, such as password protection for all computers and segregation of certain files so that only employees with a need to access the files can do so; and (d) limiting access to such information to those needing such access to perform their jobs.

## CRUMLEY RESIGNS FROM ORIZON

48.     On or about December 27, 2022, Crumley announced to Orizon's management that he was resigning. Crumley told Orizon that he had not decided on his future employment but that he had no intention of competing against Orizon.

49.     By letter dated January 18, 2023, Orizon reminded Crumley of his continuing obligations under the OMI Operating Agreement and the Confidentiality and Non-compete Agreement, stating that:

> You agreed, for a period ending 3 years after you no longer own any interest in the LLC: (i) not to engage in, assist or have any active interest in a business in competition with Orizon located or operating anywhere in the United States, the States of Missouri, Kansas and Oklahoma or within a 300 mile radius of any office

or facility of Orizon, (ii) not to solicit, disrupt Orizon's relationship with, or hire, any employees or independent contractors of Orizon, [and] (iii) not to divert, solicit or accept business from any customer or prospective customer of Orizon …

50.     Crumley's last day of employment with Orizon was January 27, 2023.

51.     Crumley stills owns his membership interest although such interest is subject to IOM's repurchase rights under the IOM Operating Agreement.  Exhibit 1 at p. 16, ¶ 10.2.

## CRUMLEY HIRED BY VALENCE GENERAL MANAGER OF ITS WICHITA, KANSAS FACILITY

52.     On February 7, 2023, Valence issued a news release that Crumley had been hired as its General Manager for its Wichita, Kansas facility.  Exhibit 2.

53.     Valence is a direct competitor of Orizon.  Valence operates processing facilities for aerostructure parts throughout the United States.  One of those processing facilities is in Wichita, Kansas.  Valence's Wichita facility provides non-destructive testing, chemical processing, and paint services, all of which are the same processing services offered by Orizon's Chanute facility.

54.     In its news release, Valence boasted that Crumley "has a history of driving process improvements and utilizing lean manufacturing tools to ensure operating improvements." *Id*.  It also reported that Crumley "will lead the operating team, set priorities for business and have ownership of the Wichita annual operating plan" and that he would be tasked with "business growth, meeting financial targets, and deploying operational excellence." *Id*.

55.     In his role as General Manager of Valence's Wichita operation, Crumley's duties and responsibilities are the same as his duties and responsibilities for Orizon.

56.     Valence and Orizon directly compete for business from the same customers. Valence's website identifies many customers that it has in common with Orizon, including Boeing, Spirit AeroSystems, Lockheed Martin, Northrop Grumman, Gulfstream, HondaJet, Cessna and Blue Origin.  In addition, Valence provides services for many of the same aircraft that Orizon does,

13

including the Boeing 737, the Boeing F-15 and F-18 fighter jets, the Lockheed Martin F-35 fighter jet, the Sikorsky Blackhawk helicopter and the Blue Origin New Shepard rock system.

57.     Although Valence may not machine and fabricate parts, it partners or contracts with others for the processing component of the manufacturing process which directly competes with Orizon.  Moreover, Orizon's processing facility processes parts that are machined and fabricated by other aerostructure part manufacturers.  Approximately 50% of Orizon's processing operation is for parts and components that are machined and fabricated by others.

58.     As described above, Crumley has extensive knowledge of Orizon's confidential, proprietary information and trade secrets.  With Valence, Crumley is employed in the same position he held with Orizon performing the same duties and responsibilities, and he and Valence are competing for the same business.  As such, Crumley has misappropriated or threatened to misappropriate Orizon's confidential, proprietary information and trade secrets.

59.     Crumley has very specific, particularized knowledge regarding Orizon's unique relationships with each of its customers, including pricing and profitability information, marketing plans, and unique processes developed by Orizon to meet its customers' needs, which puts Orizon at a significant disadvantage in competing with Valence.

60.     In addition, while employed by Orizon, Crumley was provided access to the substantial goodwill that Orizon had developed with its customers, and he was responsible for further developing, fostering and maintaining Orizon's substantial goodwill with its customers.

61.     In his position with Valence, Crumley is responsible for the services offered by Valence to its customers in direct competition with Orizon.  Crumley's extensive knowledge of Orizon's relationships with its customers and the goodwill that he garnered with them as an

employee of Orizon puts Valence at an unfair competitive advantage in competing for business with Orizon.

62.    On February 9, 2023, upon learning of Crumley's employment with Valence, Orizon sent a cease and desist to Valence informing it of Crumley's obligations under the Confidentiality and Non-compete Agreement and demanding that Valence cease its interference with the Agreement.

63.    On February 9, 2023, Orizon sent a similar cease and desist letter to Crumley demanding his strict compliance with the Confidentiality and Non-compete Agreement.

64.    Valence responded to Orizon's cease and desist letter on February 13, 2023. Valence acknowledged that Crumley had disclosed to it that he entered into a restrictive covenant agreement with Orizon. Incredibly, even though Crumley was hired to perform the same duties and responsibilities that he performed for Orizon in competition for same business, Valence claimed that "Mr. Crumley's work for Valence poses no competitive threat to Orizon."

65.    Crumley did not respond separately to the cease and desist letter sent to him.

## COUNT I
## <u>BREACH OF CONTRACT</u>
### (Defendant Crumley)

66.    Plaintiffs incorporate by reference the allegations of all other paragraphs of their Complaint as though fully set forth herein.

67.    The Confidentiality and Non-compete Agreement is a valid and enforceable contract that prohibits Crumley from, directly or indirectly, (i) engaging in, assisting or having any active interest in a business in competition with Orizon located or operating anywhere in the United States, the States of Missouri, Kansas and Oklahoma or within a 300 mile radius of any office or facility of Orizon, (ii) soliciting, disrupting Orizon's relationship with, or hiring, any employees or independent contractors of Orizon, (iii) diverting, soliciting or accepting business from any

customer or prospective Orizon customer, and (iv) from using or disclosing Orizon's confidential information.

68.     Plaintiffs have met their obligations to Crumley under the Confidentiality and Non-compete Agreement.

69.     Crumley has engaged in conduct in breach of the Confidentiality and Non-compete Agreement by being employed by Valence in direct competition with Orizon.  Moreover, based upon his position and responsibilities with Valence and the fact that Valence and Orizon compete for business with the same customers, Crumley has breached the Confidentiality and Non-compete Agreement by, directly or indirectly, soliciting or doing business with Orizon's customers.

70.     As a direct and proximate result of Crumley's actions in breach of the Confidentiality and Non-compete Agreement, Plaintiffs have and will sustain damages.

71.     In addition, Plaintiffs are entitled to recovery of its reasonable attorneys' fees and costs incurred in connection with the enforcement of the Confidentiality and Non-compete Agreement.

72.     Plaintiffs also seek injunctive relief to enjoin Crumley from breaching the Confidentiality and Non-compete Agreement.

**COUNT II**
**VIOLATION OF DEFEND TRADE SECRETS ACT**
**18 U.S.C. § 1836 *et seq*.**
**(Defendant Crumley)**

73.     Plaintiffs incorporate by reference the allegations of all other paragraphs of their Complaint as though fully set forth herein.

74.     The federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*. ("DTSA"), provides that "[a]n owner of a trade secret may bring a civil action under this subsection if the trade secret

is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. §§ 1836(b)(1).

75.    The DTSA further provides that an injunction may be granted "to prevent any actual or threatened misappropriation…"  18 U.S.C. §§ 1836(b)(3)(A).  The DTSA also provides for an award of damages for actual loss caused by the misappropriation of the trade secret" and "damages for any unjust enrichment caused by the misappropriation of the trade secret…"  18 U.S.C. §§ 1836(b)(3)(B).

76.    The DTSA defines a "trade secret" as follows:

… all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing …

18 U.S.C. § 1839(3).

77.    The DTSA defines "misappropriation" as, among other things, "disclosure or use of a trade secret of another without express or implied consent by a person who … at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was" either (i) "acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret," or (ii) "derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret…"  18 U.S.C. § 1839(5)(B)(ii)(II) and (III).

78.    During the term of Crumley's employment, Orizon disclosed various trade secrets to him, including financial, business, technical, economic, or engineering information, including patterns, plans, designs, methods, techniques, processes, and procedures, which Orizon had taken reasonable measures to keep such information secret.

17

79.     The trade secret information disclosed to Crumley derives independent economic value to Orizon from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

80.     At the time of Orizon's disclosure of its trade secrets to Crumley, he knew and had reason to know that his knowledge of the trade secrets was acquired under circumstances giving rise to a duty to maintain the secrecy or limit the use of the trade secrets, evidenced in part by the Confidentiality and Non-compete Agreement and acknowledgements contained therein.

81.     These trade secrets related to products or services used in, or intended for use in, interstate or foreign commerce, because Orizon provides the services to which the trade secrets relate pursuant to contracts with customers throughout the country.

82.     Orizon has not consented to public disclosure of its trade secrets by Crumley.

83.     In his position with Valence, Crumley has misappropriated or threatened to misappropriate Orizon's trade secrets.  In performing his duties and responsibilities for Valence, Crumley has or will disclose Orizon's trade secrets because (i) Orizon and Valence are direct competitors in the aerostructure parts manufacturing industry, (ii) the position he holds for Valence is identical to the position that he held for Orizon, and (iii) in placing Crumley in that position, Valence has failed to take actions to prevent Crumley from using or disclosing Orizon's trade secrets and instead placed Crumley in a key managerial position nearly identical to the position that Crumley occupied for 6 ½ years at Orizon.

84.     Orizon brings this claim to prevent the actual or threatened misappropriation of its trade secrets by Crumley, as specifically provided under 18 U.S.C. § 1836(b)(3).

85.     Orizon is also entitled to an award against Crumley under 18 U.S.C. § 1836(b)(3)(B) for: (i) damages for actual loss caused by the misappropriation of Orizon's trade secrets; and (ii) damages for any unjust enrichment caused by the misappropriation of Orizon's trade secrets that is not addressed in computing damages for actual loss; or alternatively, (iii) in lieu of damages measured by any other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the unauthorized disclosure or use of Orizon's trade secrets.

86.     Upon proof that Crumley willfully and maliciously misappropriated its trade secrets, Orizon is also entitled to an award of exemplary damages in an amount not more than two times the amount of the damages awarded and attorneys' fees.  18 U.S.C. §§ 1836(b)(3)(C) and (D).

## COUNT III
### VIOLATION OF THE UNIFORM TRADE SECRETS ACT
#### K.S.A. § 60-3320 *et seq*. and 6 DE Code § 2001 *et seq.*
**(Defendant Crumley)**

87.     Plaintiffs incorporate by reference the allegations of all other paragraphs of their Complaint as though fully set forth herein.

88.     Kansas and Delaware have adopted the Uniform Trade Secrets Act ("UTSA"). K.S.A. § 60-3320 *et seq.*; 6 DE Code § 2001 *et seq.*  The Kansas and Delaware Uniform Trade Secrets Act are substantively identical.

89.     The UTSA provides that an owner of a trade secret may bring a civil action to prevent any actual or threatened misappropriation of a trade secret.  K.S.A. § 60-3320 *et seq.*; 6 DE Code § 2001 *et seq.*

90.     Under the UTSA, a "trade secret" is a defined as follows:

a formula, pattern, compilation, program, device, method, technique or process, that:

(i)     Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(ii)    Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

K.S.A. § 60-3320(4); 6 DE Code § 2001(4).

91.     The UTSA defines "misappropriation" as, among other things, "disclosure or use of a trade secret of another without express or implied consent by a person who –… at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was" either (i) "acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret," or (ii) "derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret…"  K.S.A. § 60-3320(2); 6 DE Code § 2001(2).

92.     Under the facts alleged above, Crumley misappropriated, or threatened to misappropriate, and may continue to appropriate Orizon's trade secrets, all as prohibited under the UTSA.

93.     Accordingly, Orizon brings this claim to prevent the actual or threatened misappropriation of its trade secrets by Crumley, as specifically provided under the UTSA.

94.     In particular, Orizon requests a temporary restraining order, preliminary injunction, and/or permanent injunction under the UTSA to prevent any actual or threatened misappropriation of its trade secrets.  K.S.A. § 60-3321; 6 DE Code § 2002.

95.     Orizon also requests an award against Crumley under UTSA for: (i) damages for actual loss caused by the misappropriation of Orizon's trade secrets; and (ii) damages for any unjust enrichment caused by the misappropriation of Orizon's trade secrets that is not addressed in computing damages for actual loss; or alternatively, (iii) in lieu of damages measured by any

20

other methods, the damages caused by the misappropriation measured by imposition of liability

for a reasonable royalty for the unauthorized disclosure or use of Orizon's trade secrets.  K.S.A. §

60-3322(a); 6 DE Code § 2003(a).

96.    Upon proof that Crumley willfully and maliciously misappropriated its trade

secrets, Orizon also seeks an award of exemplary damages in an amount not more than two times

the amount of the damages awarded and its attorneys' fees.  K.S.A. §§ 60-3322(b), 3323; 6 DE

Code §§ 2003(b), 2004.

**COUNT IV**
**TORTIOUS INTERFERENCE WITH CONTRACT**
**(Defendants Valence and Chrome Plus)**

97.    Plaintiff incorporates by reference the allegations of all other paragraphs of their

Complaint as though fully set forth herein.

98.    The Confidentiality and Non-compete Agreement is valid and enforceable

contracts.

99.    Valence was aware of the Confidentiality and Non-compete Agreement, including

the restrictive covenants contained therein.

100.    By continuing to employ Crumley to perform services as an employee of Valence

in a nearly identical role as that which Crumley occupied with Orizon, Valence has intentionally

interfered with the contract between Orizon and Crumley.

101.    Valence had no justification for its intentional interference with the Confidentiality

and Non-compete Agreement between Orizon and Crumley.

102.    As a direct and proximate result of the actions of Valence, Orizon has sustained

damages.

103.    The conduct of Valence, as alleged herein, was intentional, malicious and

demonstrates a complete indifference to or a conscious disregard for the rights of Orizon.

21

## COUNT V
## UNFAIR COMPETITION
### (Defendants Crumley, Valence and Chrome Plus)

104.    Plaintiffs incorporate by reference the allegations of all other paragraphs of their Complaint as though fully set forth herein.

105.    Defendants' conduct described herein constitutes an unfair method of competition.

106.    Crumley has breached, and continues to breach, the Confidentiality and Non-compete Agreement between him and Orizon in order to unfairly compete, gain a competitive advantage in the marketplace, and cause harm or otherwise be detrimental to Orizon.

107.    Valence wrongfully and intentionally interfered with Orizon's relationships with Crumley in order to unfairly compete, gain a competitive advantage in the marketplace, and cause harm or otherwise be detrimental to Orizon.

108.    Defendants' conduct interfered and continues to interfere with Orizon's ability to conduct its business.

109.    As a direct and proximate result of the acts and course of conduct of Defendants described herein, Orizon has sustained damages.

110.    The conduct of Defendants was willful and malicious and demonstrates a complete indifference to or a conscious disregard for the rights of Orizon.

## COUNT VI
## DECLARATORY JUDGMENT/SPECIFIC PEFORMANCE
### (Defendant Crumley)

111.    Plaintiffs incorporate by reference the allegations of all other paragraphs of their Complaint as though fully set forth herein.

112.    This Court has authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

FP 46396205.2

113.    Under the OMI Operating Agreement, OMI maintains the right to repurchase Crumley's Member Interest in OMI.  Exhibit 1 at p. 21, ¶ 10.2.  The Operating Agreement provides as follows:

> The Manager may cause the LLC to, at any time …, repurchase (and each Member agrees to sell) any Interests held by any Member and the price paid by the LLC for such repurchase shall be determined by the Manager in its sole discretion, but in any event, shall not be less than the lesser of: (a) the fair market value of the Interests, as determined by the Manager, or (b) the aggregate amount paid by such Member for such Interests.

*Id*.

114.    The Operating Agreement further provides that OMI shall be entitled to set-off and reduce the repurchase amount for any claims by OMI or Orizon against Crumley.  *Id*.

115.    OMI requests the Court for declaratory relief that (a) Crumley has breached the Operating Agreement, including the Confidentiality and Non-compete Agreement incorporated therein, (b) the value of OMI's set-off claims against Crumley exceed the aggregate amount paid by Crumley for his membership interest, and therefore, the repurchase price for Crumley's Member Interest is zero, and (c) Crumley transfer his Membership Interest to OMI pursuant to the Operating Agreement.

## COUNT VII
## INJUNCTIVE RELIEF
**(Defendants Crumley, Valence and Chrome Plus)**

116.    Plaintiffs incorporate by reference the allegations of all other paragraphs of their Complaint as though fully set forth herein.

117.    Crumley has breached, and continues to breach, the Confidentiality and Non-compete Agreement between him and Orizon.

118.    Crumley has misappropriated or threatened to misappropriate Orizon's trade secrets.

119.    Valence continues to interfere with Orizon's contractual relationship with Crumley by continuing to employ him in direct violation of his contractual obligations to Plaintiffs.

120.    Plaintiffs are likely to prevail on the merits of its claims against Defendants.

121.    Defendants' conduct has resulted, and will continue to result, in irreparable injury and harm to Plaintiffs, including, without limitation, loss of customers, loss of good will, loss of customer confidence, loss of confidential business information, loss of trade secrets, loss of reputation, loss of contracts with customers, loss of competitive advantage and unknown economic loss.

122.    The requested injunctive relief serves to preserve the status quo and prevent additional irreparable harm pending a determination of the controversy between the parties.

123.    Because it is impossible for Plaintiffs to calculate the damage that has resulted, and will continue to result, from Defendants' unlawful conduct, Orizon has no adequate remedy at law.

124.    The potential harm to Orizon if Defendants are not enjoined from continuing to violate the Confidentiality and Non-compete Agreement is far greater than any harm Defendants may suffer if injunctive relief is granted.

125.    Injunctive relief is not adverse to the public interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Orizon Aerostructures, LLC and Orizon Management Incentive, LLC pray for judgment against Defendants Justin J. Crumley, Valence Surface Technologies, LLC and Chrome Plus International, LLC as follows:

(a)    temporary, preliminary, and permanent injunctive relief providing:

(i)    For a period of three (3) years following the date injunctive relief is first granted, Justin J. Crumley, and all parties acting in concert or participation with him, shall be enjoined from (i) diverting or attempting to divert (by solicitation, diversion or otherwise) from Orizon any business with any customer, prospective customer or account of Orizon; and (ii) accepting

FP 46396205.2

business from any customer, prospective customer or account of Orizon, whether solicited or not solicited by Mr. Crumley;

(ii)    For a period of three (3) years following the date injunctive relief is first granted, Justin J. Crumley, and all parties acting in concert or participation with him, shall be enjoined from directly or indirectly engaging in, assisting or having any active interest in a business in competition with Orizon; and

(iii)   For a period of five (5) years following the date injunctive relief is first granted, Justin J. Crumley and all parties acting in concert or participation with him, shall be enjoined from directly or indirectly using or disclosing Orizon's confidential and proprietary information.

(b)    Temporary, preliminary, and permanent injunctive relief providing as follows:

(i)    Valence Surface Technologies, and all parties acting in concert or participation with him, shall be enjoined from employing Justin J. Crumley in any position that interferes with the performance of his obligations under the Confidentiality and Non-compete Agreement.

(c)    Actual, compensatory and punitive damages in an amount to be proven at trial;

(d)    Orizon's actual and reasonable attorneys' fees, costs and expenses incurred or expended in enforcing the Confidentiality and Non-compete Agreement and in pursuing its statutory rights;

(e)    Pre- and post-judgment interest at the maximum rate permitted by law; and

(f)    Such other and further relief as the Court deems just and proper.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff requests Kansas City, Kansas as the place of trial.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury as to call claims not subject to the "Waiver of Jury Trial"

contained in the OMI Operating Agreement and the Confidentiality and Non-compete Agreement.

Respectfully submitted,

*/s/ James C. Sullivan*

James C. Sullivan      KS FED # 70453
Gregory D. Ballew    KS Bar No. 17214
**FISHER & PHILLIPS LLP**
4622 Pennsylvania Ave., Suite 910
Kansas City, MO  64112
TEL: (816) 842-8770
FAX: (816) 842-8767
Email:  jsullivan@fisherphillips.com

ATTORNEYS FOR PLAINTIFFS

26

**<u>VERIFICATION</u>**

I declare and verify under penalty of perjury under the laws of the United States that the

foregoing is true and correct.

Executed on:  February 21, 2023

Jay Crumrine
Vice President of Human Resources
Orizon Aerostructures, LLC
Authorized Member
Orizon Management Incentive, LLC

27