IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ORIZON AEROSTRUCTURES, LLC, et al.,** | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. 2:23-cv-02069-EFM-GEB ) |
| **JUSTIN J. CRUMLEY, et al.,** | ) ) |
| Defendants. | ) ) |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiffs Orizon Aerostructures, LLC ("Orizon") and Orizon Management Incentive, LLC ("OMI") (Orizon and OMI collectively, "Plaintiffs") hereby submit their *Memorandum in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction* against Defendants Justin J. Crumley ("Crumley") and Valence Surface Technologies, LLC ("Valence") (Crumley and Valence collectively, "Defendants"):

### NATURE OF THE MATTER

Crumley was formerly employed by Orizon as its General Manager and Vice President of Operations at its facility in Chanute, Kansas. As a member of Orizon's key management, Crumley was entrusted with Orizon's confidential information and trade secrets, and he developed and fostered Orizon's relationships with its customers. Crumley agreed to take ownership interest in Orizon, whereby he agreed that, while he held that ownership interest and for three years thereafter, he (i) would not work for a competitor of Orizon, and (ii) would not solicit or do business with Orizon's customers. He also agreed not to use or disclose Orizon's confidential information.

Crumley voluntarily resigned from his employment with Orizon effective January 27, 2023. Upon his departure, Crumley told Orizon that he had not made a decision regarding his future employment, but that he had no intention of competing against Orizon.

FP 46400131.2

Crumley's representations to Orizon were false. On February 7, 2023, Valence, a direct competitor of Orizon, announced that it had hired Crumley in a position identical to his position with Orizon, performing the same duties and responsibilities he did for Orizon. Crumley's employment with Valence is in direct violation of his restrictive covenants with Orizon. Moreover, Valence has tortiously interfered with Crumley's obligations under those restrictive covenants.

## STATEMENT OF RELIEF SOUGHT

Pursuant to Fed.R.Civ.P. 65, Plaintiffs seek a temporary restraining order and preliminary injunction enjoining Crumley from violating the Confidentiality and Non-compete Agreement (Count I) and enjoining Valence from interfering with Crumley's obligations under the Agreement (Count IV).

## STATEMENT OF FACTS

### ORIZON AEROSTRUCTURES, LLC

Orizon is an aerostructures technology company that manufactures, sells and distributes parts for airplanes, fighter planes, helicopters, rockets and satellites for use in the commercial airline, private or business airplane, the United States military defense and private space technology industries. Doc. 1 at ¶ 15. Orizon competes for business throughout the United States. *Id*. at ¶ 16. Its customers include Boeing, Spirit AeroSystems, Lockheed Martin, Sikorsky, Northrop Grumman, Gulfstream, HondaJet, Cessna and Blue Origin. *Id*. Orizon manufactures parts for familiar aircraft such as the Boeing 737, the Boeing F-15 and F-18 fighter jets, the Lockheed Martin F-35 stealth fighter jet, the Sikorsky Black Hawk helicopter and the Blue Origin New Shepard rocket system. *Id*.

OMI owns an interest in Orizon. *Id*. at ¶ 23. OMI was established in order to attract and retain key management personnel to participate in the ownership of Orizon. *Id.* Those key management personnel who become members of OMI must agree to the terms of OMI's Operating

Agreement and the Confidentiality, Non-compete and Intellectual Property Agreement ("Confidentiality and Non-compete Agreement").  *Id*. at ¶ 24; Doc. 1-1.

### CRUMLEY'S EMPLOYMENT WITH ORIZON

Crumley was hired by Orizon in or about June 2016 to be the General Manager of its yet-to-be-built processing facility in Chanute, Kansas. Doc. 1 at ¶ 25. Processing an aerostructure part, which occurs after it is created from the raw material, is critical to the manufacturing process. Processing involves several steps including masking the part, non-destructive, penetrant testing for raw material or manufacturing defects, corrosion protection, priming and painting, and demasking. *Id*. at ¶ 26.

Initially, Crumley's primary responsibility was to manage the building of the Chanute processing facility and to develop the interior design and layout of the facility to ensure that each step of the processing operation could be performed with the highest degree of efficiency and quality. *Id*. at ¶ 27-29. To accomplish this responsibility, Orizon provided Crumley all of the necessary resources to build a state-of-the-art processing facility as Orizon envisioned. *Id*.

Under Crumley's management, Orizon invested more than $17 million in the Chanute processing facility. *Id*. at ¶ 30. The unique design and layout of Orizon's processing facility and the efficiencies built into it are highly proprietary and confidential to Orizon and provide Orizon an advantage over its competitors. *Id*. The Chanute processing facility was completed in or about July 2017, and Crumley's responsibilities transitioned to managing its operations. *Id*. at ¶ 31.

As the General Manager of Orizon's processing facility, Crumley was responsible for all facets of operating and maintaining the processing facility, including its financial performance and productivity, achieving monthly and yearly sales and profitability goals, developing and maintaining relationships with Orizon's vendors, managing cost reduction efforts and process improvements, establishing procedures and strategies for maintaining the highest safety and

quality standards, developing and implementing marketing plans, and developing and fostering relationships with Orizon's customers. *Id*. at ¶ 32.

Crumley was among the first associates invited to become a member of OMI. *Id*. at ¶ 33. On December 1, 2018, Crumley and OMI executed a Joinder to Operating Agreement of OMI, whereby Crumley agreed "to become a party to, to be bound by, and to comply with the provisions of, [OMI's] Operating Agreement," including the Confidentiality and Non-compete Agreement. *Id*. at ¶¶ 33, 34; Doc. 1-1 at 7, ¶ 1.6.  The Confidentiality and Non-compete Agreement provides that it is entered into for the benefit of OMI and its parents, subsidiaries or affiliates, which includes Orizon. Doc. 1 at ¶ 35; Doc. 1-1 at 27.

Under the Confidentiality and Non-compete Agreement, Crumley agreed that, while he was a member of OMI and for three (3) years after he was no longer a member of OMI, he would not:

> b. (i) divert or attempt to divert (by solicitation, diversion or otherwise) from Orizon any business with any customer, prospective customer or account; [or] (ii) accept the business of any customer, prospective customer or account of Orizon, whether solicited or not solicited by such Member …; or
>
> c. engage in, assist or have any active interest in a business located or operating anywhere in (x) the United States, (y) the States of Missouri, Kansas and Oklahoma or (z) within a three hundred (300) mile radius of any office or facility owned, leased or operated by Orizon that, directly or indirectly: (i) manufactures, markets, sells or distributes aerospace products, including aerostructure parts and components; or (ii) otherwise competes with the business conducted by Orizon on the date hereof or by Orizon at any time during the term of this covenant.

Doc. 1 at ¶ 36; Doc. 1-1 at 27, ¶ 1. [1]

The Confidentiality and Non-compete Agreement also provides as follows:

---

[1] With respect to the geographical scope of the non-compete provision, the Confidentiality and Non-compete Agreement further provides that "the parties intend that the covenants and agreements contained in parts (x), (y) and (z) … shall be deemed to be a series of separate covenants and agreements" and that  "it is the intention of the parties hereto that the covenants and agreements which, if eliminated, would permit the remaining separate covenants and agreements to be enforced …" Doc. 1 at ¶ 37; Doc. 1-1 at 30, ¶ 4.

> Confidentiality Obligations. Each Member further acknowledges and recognizes that the customer lists, prospective customers, and other customer information, suppliers, prices, selling techniques, methods of operation, technology, business processes and know-how, management techniques, administrative procedures, sales, contracts, future or present business plans, including acquisitions or future service offerings, marketing data, unpublished advertising or promotional matter, techniques, sales forecasts or other financial information and any other information as to the business affairs of Orizon (collectively, "Confidential Information") are: (a) valuable and unique assets of Orizon's business, and (b) confidential and valuable trade and business secrets belonging to Orizon. In addition, Member acknowledges and recognizes that Orizon and its customers and suppliers have a contractual relationship, which is a valuable asset belonging to Orizon. Member, therefore, agrees that so long as Member owns any Interest in the LLC and for a period of five (5) years after such Member's Ownership Termination Date, regardless of the reason, Member will not disclose or use (other than for purposes related to Member's official duties for Orizon) at any time any such Confidential Information of Orizon of which Member becomes informed of or had access to during Member's employment or ownership of the Interest.

Doc. 1 at ¶ 38; Doc. 1-1 at 28-29, ¶ 2.

In February 2021, Crumley was promoted to Vice President of Operations of Orizon's Chanute facility. Doc. 1 at ¶ 39. As the Vice President of Operations, Crumley maintained his duties and responsibilities over the processing operations, and he was also responsible for operating and maintaining its assembly operations. *Id*. Crumley's duties and responsibilities over the assembly operations were the same as his duties and responsibilities over the processing operations as described above. *Id*.

Throughout his employment, Crumley continuously had access to and used Orizon's confidential, proprietary information and trade secrets in addition to those described above. Crumley fostered and maintained Orizon's goodwill with its customer and prospective customers. *Id*. at ¶ 41. Orizon provided Crumley access to detailed information regarding its customers, including pricing, customer gross margins, delivery schedules, customer satisfaction, and customer specific marketing plans and strategies. *Id*. at ¶ 42. Crumley also had access to Orizon's contracts with its customers many of which extend out three or more years and contain provisions for price

adjustments based on specific criteria. *Id*. at ¶ 43. In addition, Crumley had access to detailed information regarding Orizon's operations, including supplier information, supply chain management, labor and material costs, operating and production costs, financial performance and productivity information, process improvement plans, and marketing and sales plans. *Id*. at ¶ 44.

Orizon, under Crumley's management, continued to make substantial investments in its processing facility to increase its efficiencies. *Id*. at ¶ 45. For instance, Orizon innovated unique processes for masking parts and testing and measuring aerostructure parts to ensure that they meet the customer's specifications. *Id*. These methodologies are highly proprietary and confidential to Orizon and provide Orizon an advantage over its competitors. *Id*.

As part of Orizon's key management and a member of OMI, Crumley was made privy to highly confidential, proprietary information regarding Orizon's business beyond just its Chanute facility. *Id*. at ¶ 46. For instance, Crumley attended meetings of Orizon's Management Leadership Group. Most recently, Crumley attended one such meeting on December 8, 2022, just weeks before he announced his resignation, during which he was provided detailed information regarding the following: (i) actual and projected revenues and sales by customer through 2026; (ii) actual and projected gross margins through 2026; (iii) actual and projected balance sheets through 2026; (iv) actual and projected valuations of Orizon's business through 2026; (iv) business plans for increasing sales and profitability; and (v) customer satisfaction ratings. *Id*.

Orizon put in place policies and processes to protect and secure its confidential information and trade secrets, including the following: (a) implementing policies and protocols to protect against the disclosure of sensitive materials to third parties or Orizon employees who do not have a business need to access the materials; (b) IT security measures, such as password protection for all computers and segregation of certain files so that only employees with a need to access the files

6

can do so; and (d) limiting access to such information to those needing such access to perform their jobs. *Id*. at ¶ 47.

### CRUMLEY RESIGNS FROM ORIZON

On or about December 27, 2022, Crumley announced that he was resigning. *Id*. at ¶ 48. Crumley told Orizon that he had not decided on his future employment but that he had no intention of competing against Orizon. *Id*. By letter dated January 18, 2023, Orizon reminded Crumley of his continuing obligations under the Confidentiality and Non-compete Agreement. *Id*. at ¶ 49. Crumley's last day of employment with Orizon was January 27, 2023. *Id*. at ¶ 50.

### CRUMLEY HIRED BY VALENCE GENERAL MANAGER OF ITS WICHITA, KANSAS FACILITY

On February 7, 2023, Valence issued a news release that Crumley had been hired as its General Manager for its Wichita, Kansas facility. *Id*. at ¶ 52; Doc. 1-2. Valence is a direct competitor of Orizon. Doc. 1 at ¶ 53. Valence operates processing facilities for aerostructure parts throughout the United States. Valence's Wichita facility provides non-destructive testing, chemical processing, and paint services, the same processing services offered by Orizon. *Id*.

In its news release, Valence boasted that Crumley "has a history of driving process improvements and utilizing lean manufacturing tools to ensure operating improvements." *Id*. at ¶ 54. It also reported that Crumley "will lead the operating team, set priorities for business and have ownership of the Wichita annual operating plan" and that he would be tasked with "business growth, meeting financial targets, and deploying operational excellence." *Id*. With Valence, Crumley is employed in the same position he held with Orizon performing the same duties and responsibilities, and he and Valence are competing for the same business. *Id*. at ¶ 55, 58.

Valence and Orizon directly compete for business from the same customers on many of the same aircraft. *Id*. at ¶ 56. Valence's website identifies many customers that it has in common

with Orizon, including Boeing, Spirit AeroSystems, Lockheed Martin, Northrop Grumman, Gulfstream, HondaJet, Cessna and Blue Origin. In addition, Valence provides services for many of the same aircraft that Orizon does, including the Boeing 737, the Boeing F-15 and F-18 fighter jets, the Lockheed Martin F-35 fighter jet, the Sikorsky Blackhawk helicopter and the Blue Origin New Shepard rocket system. *Id*.

In his position with Valence, Crumley is responsible for the services offered by Valence to its customers in direct competition with Orizon. *Id*. at ¶ 61. Crumley's extensive knowledge of Orizon's confidential information and trade secrets and his relationships with Orizon's customers and the goodwill that he garnered with them as an employee of Orizon puts Valence at an unfair competitive advantage in competing for business. *Id*.

On February 9, 2023, upon learning of Crumley's employment with Valence, Orizon sent a cease and desist to Valence that it cease any interference with Crumley's obligations under the Confidentiality and Non-compete Agreement. *Id*. at ¶ 62. Orizon also sent a cease-and-desist letter to Crumley demanding his strict compliance with the Agreement. *Id*.

Valence responded to Orizon's cease and desist letter on February 13, 2023. *Id*. at ¶ 62. Valence acknowledged that Crumley informed it of his restrictive covenant agreement with Orizon. *Id*. Incredibly, even though Crumley was hired to perform the same duties and responsibilities that he performed for Orizon in competition for same business, Valence claimed that "Mr. Crumley's work for Valence poses no competitive threat to Orizon." *Id*. Crumley did not respond separately to the cease-and-desist letter sent to him. *Id*. at ¶ 65.

## **LEGAL ARGUMENT AND AUTHORITIES**

Under Fed.R.Civ.P. 65(b), Orizon is entitled to injunctive relief based on its showing on each of the four required elements: (1) Orizon has a substantial likelihood of success on the merits

8

of its claims, (2) Orizon will suffer irreparable injury unless the injunction issues; (3) the threatened injury to Orizon outweighs whatever harm the proposed injunction may cause Defendants; and (4) the requested injunction would not be adverse to the public interest. *N.M. Dep't of Game & Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1246 (10th Cir. 2017).

I. **Orizon Is Likely to Succeed on the Merits.**

   A. **Orizon Is Likely to Succeed on the Merits of Its Breach of Contract Claim Against Crumley.**

Orizon has established a likelihood of success on the merits of its breach of contract claim against Crumley. Crumley has breached and, unless enjoined, will continue to breach the Confidentiality and Non-compete Agreement through his employment with Valence, a direct competitor of Orizon, in a position that is nearly identical to his position at Orizon and performing the same duties and responsibilities that he performed for Orizon.

The Confidentiality and Non-compete Agreement is governed by Delaware law.[2] Under Delaware law, a restrictive covenant, such as a non-compete agreement, is enforceable if it (1) meets general contract law requirements, (2) is reasonable in scope and duration, (3) advances a legitimate economic interest of the party enforcing the covenant, and (4) survives a balance of the equities. *Tristate Courier & Carriage, Inc. v. Berryman*, 2004 WL 835886, at *10 (Del. Ch. Apr. 15, 2004) (citing *Research & Trading Corp. v. Pfuhl*, 1992 WL 345465, at *11 (Del. Ch. Nov. 18, 1992).[3]

---

[2] Doc. 1-1 at 25, ¶ 12.9. "Federal courts in Kansas routinely enforce the parties' contractual choice-of-law provisions under Kansas choice-of-law rules." *Altrutech, Inc. v. Hooper Holmes, Inc.*, 6 F.Supp.2d 1269, 1273 (D. Kan. 1998).

[3] If the Court determines that the geographic or temporal scope of the Confidentiality and Non-compete Agreement is overbroad, Delaware courts routinely modify or "blue pencil" the restrictive covenants. *WedMD Health Corp. v. Dale*, 2012 WL 3263582, at *9 (E.D. Pa. Aug 20, 2012) ("Delaware courts themselves 'blue pencil' restrictive covenant agreements that may be otherwise unenforceable, if the equities so dictate."); *Knowles-Zeswitz Music, Inc. v. Cara*, 260 A.2d 171, 175 (Del. 1969) (restricting the geographic area in a non-compete agreement to only the areas in which

9

### 1. *The Confidentiality and Non-compete Agreement Is a Valid, Enforceable Contract.*

The Confidentiality and Non-compete Agreement meets the elements of an enforceable contract. "The formal elements required in an agreement not to compete are the same as those required for a contract in general, namely a mutual assent to the terms of the agreement by all parties and the existence of consideration." *Faw, Casson & Co. v. Cranston*, 375 A.2d 463, 466 (Del. Ch. 1977); *see also Express Shuttle, Inc.*, 2002 WL 31458243, at *11.

In becoming a member of OMI, Crumley agreed to be bound by the Confidentiality and Non-compete Agreement. In exchange, Crumley was granted his membership interest in OMI. *TP Grp.-CI, Inc. v. Vetecnik*, 2016 WL 5864030, at *4 (D. Del. Oct. 6, 2016) (finding valid consideration where restrictive covenants were in exchange for stock options). Orizon has an enforceable interest in the Confidentiality and Non-compete Agreement, which expressly includes OMI and its affiliates. *See Bako Pathology LP v. Bakotic*, -- A.3d --, 2022 WL 17243705, at * 12-13 (Del. Nov. 28, 2022).

### 2. *The Confidentiality and Non-compete Agreement Is Reasonable in Scope.*

When assessing reasonableness, Delaware courts focus on whether the restrictive covenant is "essential for the protection of the employer's economic interests." *Norton Petroleum Corp. v. Cameron*, 1998 WL 118198, at *3 (Del. Ch. Mar. 5, 1998); *see also O'Leary v. Telecom Resources Service, LLC*, 2011 WL 379300, at *5 (Del. Ch. Jan. 14, 2011). "'Legitimate interests' recognized by Delaware law include protection of employer goodwill, and protection of employer confidential information from misuse." *Kan-Di-Ki, LLC v. Suer*, 2015 WL 4503210, at *19 (Del. Ch. July 15, 2015); *Pfuhl*, 1992 WL 345465, at *12.

---

the former employee was a sole representative); *Express Shuttle, Inc.*, 2002 WL 31458243, at *14 (modifying temporal scope from three years to two years).

10

The Confidentiality and Non-compete Agreement contains a non-compete provision and a customer non-solicitation provision, both of which are reasonable in geographic scope. The non-compete provision prohibits Crumley from engaging in, assisting or having any active interest in a business that competes with Orizon "located or operating anywhere in (x) the United States, (y) the States of Missouri, Kansas and Oklahoma or (z) within a 300 mile radius of any office or facility of Orizon." Based on Crumley's extensive knowledge of Orizon's confidential, proprietary information and trade secrets and because Orizon competes for business throughout the United States, the appropriate and reasonable geographical scope is the United States.

> In Delaware, "the reasonableness of a covenant's scope is not determined by reference to physical distances, but by reference to the area in which a covenantee has an interest the covenants are designed to protect." The overarching intent of a non-compete covenant is to protect the geographical area where the business owner conducts business, and to protect its economic interests against those who may have gained an unfair competitive advantage against them as a former employee. A national scope can be particularly necessary in today's world where so many businesses operate on a national or even global scale.

*O'Leary*, 2011 WL 379300, at * 5 (quoting *Weichert Co. of Pa. v. Young*, 2007 WL 4372823, at *3 (Del. Ch. 2007), and *Express Shuttle, Inc.*, 2002 WL 31458243, at *12).

Under the customer non-solicitation provision, Crumley agreed not to divert, solicit or accept the business "of any customer, prospective customer or account of Orizon." The purpose of a customer non-solicitation agreement "is to protect an employer's goodwill in a given market." *Express Shuttle, Inc.*, 2002 WL 31458243, at *12.

> If this market, or more accurately, the employer's customer base, extends throughout the nation, or indeed even internationally, and the employee would *gain from the employment* some advantage in any part of that market, then it is appropriate that an employee subject to a non-competition agreement be prohibited from soliciting those customers on behalf of a competitor regardless of their geographic location.

*Pfuhl*, 1992 WL 345465, at * 12 (emphasis in original). Orizon's customer base is not limited to a geographic area, but rather encompasses customers in the aerostructure parts industry throughout

the United States. Crumley had access to Orizon's highly confidential, proprietary information and trade secrets. In addition, Crumley's responsibilities included developing and fostering relationships with Orizon's customers. The scope of the non-solicitation provision is reasonable and necessary to protect Orizon's legitimate interests.

### 3. *The Confidentiality and Non-compete Agreement Is Reasonable in Duration.*

"Reasonableness of duration must be determined based upon the nature of the employee's position and the context of a particular industry." *Express Shuttle, Inc.*, 2002 WL 31458243, at *14. The Confidentiality and Non-compete Agreement contains three (3) year duration, which Delaware courts have found to be reasonable. *Hough Associates, Inc. v. Hill*, 2007 WL 148751, at * (Del. Ch. Jan. 17, 2007) (prohibiting an employee from competing with his former employer for three years); *Norton Petroleum Corp.*, 1998 WL 118198, * 5 (same); *Gas–Oil Products, Inc. of Delaware v. Kabino*, 1987 WL 18432, at * 1-2 (Del. Ch. Oct. 13, 1987) (enjoining an employee from soliciting an employer's customers or divulging certain information for three years).

The three (3) year duration is reasonable based on Crumley's position with Orizon and his knowledge of Orizon's confidential, proprietary information and customer relationships. For instance, Crumley has knowledge of Orizon's contracts with its customers many of which extend out three or more years and contain provisions for price adjustments based on specific criteria. In addition, Crumley has knowledge of Orizon's actual and projected revenues and sales by customer through 2026 and its actual and projected gross margins through 2026. The three (3) year duration is necessary to protect this confidential information and to prevent Crumley from using it to unfairly compete with Orizon.

12

## 4. The Confidentiality and Non-compete Agreement Protects Orizon's Legitimate Interests.

As noted above, Delaware courts recognized that an employer has a legitimate interest in its confidential information and customer goodwill. Crumley has extensive knowledge Orizon's confidential information, including information regarding its operations, unique methods and processes, customer relationships (i.e., contract terms, pricing, profit margins and customer satisfaction), marketing plans, suppliers, operating and production costs, cost reduction plans, productivity and financial performance. *See W.L. Gore & Assocs., Inc. v. Wu*, 2006 WL 2692584, at *14 (Del. Ch. Sept. 15, 2006) (concluding that former employee had extensive knowledge which "would almost certainly filter into his work" for a competitor and result in disclosure of proprietary information). In addition, Crumley fostered and maintained Orizon's goodwill with its customer and prospective customers. The Confidentiality and Non-compete Agreement protects these legitimate interests.

## 5. The Equities Weigh in Favor of Enforcing the Confidentiality and Non-Compete Agreement.

Under Delaware law, "equity may decline to grant specific enforcement if the interests that the employer seeks to protect are ephemeral in contrast to the grave harm to the employee resulting from enforcing the restriction." *Berryman*, 2004 WL 835886, at *14; *see also Weichert*, 2007 WL 4372823, at *5. Orizon's legitimate interests are certainly not "ephemeral." As part of Orizon's key management, Crumley was entrusted with Orizon's confidential information and trade secrets. He was also invited to participate in the ownership of Orizon. He accepted that invitation, and in doing so, he knowingly agreed to the terms of the Confidentiality and Non-compete Agreement. *Id*. ("Failing to enforce the covenants would deprive [the company] of the benefits of its bargain.").

Crumley has significant knowledge of and experience in the manufacturing industry. He also has significant experience in management positions. An injunction enforcing the

Confidentiality and Non-compete Agreement would not prohibit Crumley from taking advantage of his experience, as he would be free to accept employment in a non-competitive industry. *Sensus USA, Inc. v. Franklin*, 2016 WL 1466488, at * 8 (D. Del. Apr. 14, 2016).

> **B.  Orizon Is Likely to Succeed on Its Tortious Interference Claim Against Valence.**

"Kansas law has long recognized that one who, without justification, induces or causes a breach of a contract to which it is not a party will be answerable for damages caused thereby." *Pulsecard, Inc. v. Discover Card Servs.*, 917 F. Supp. 1488, 1498 (D. Kan. 1996). To establish a claim of tortious interference, Orizon must show: (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his or her intentional procurement of its breach; (4) the absence of justification; and (5) damages. *Id.*

Crumley told Valence that he had a restrictive covenant agreement before it hired him. Moreover, on February 9, 2023, Orizon, through its counsel, informed Valence of Crumley's obligations under the Confidentiality and Non-compete Agreement. Despite this knowledge, Valence intentionally interfered with the Confidentiality and Non-compete Agreement by employing Crumley in a position that is nearly identical his position with Orizon. Orizon has established a likelihood of success on the merits of its tortious interference claim against Valence.

**II.  Orizon Will Be Irreparably Harmed Unless the Court Grants Its Motion for Temporary Restraining Order.**

Irreparable harm is "the most important factor in obtaining a preliminary injunction." *Universal Engraving, Inc. v. Duarte*, 519 F. Supp. 2d 1140, 1148 (D. Kan. 2007). This element is satisfied if "there is a significant risk of harm that cannot be cured by monetary damages." *Amedisys, Inc. v. Interim Healthcare of Wichita, Inc.*, 2015 WL 1912308, at * 2 (D. Kan. Apr. 27, 2015). "Unfair competition resulting from a breach of covenant not to compete is likely to constitute irreparable harm." *Amedisys, Inc.*, 2015 WL 1912308, at * 2. "Loss of customers, loss

of goodwill, and threats to a business['s] viability have been found to constitute irreparable harm." *Id*. Irreparable harm need not have occurred when a motion for temporary restraining order is filed. *Fireworks Spectacular, Inc. v. Premier Pyrotechnics, Inc.*, 86 F.Supp.2d 1102, 1108 (D.Kan.2000) (plaintiff showed irreparable harm where defendant's behavior was likely to result in a loss of customers as well as customer goodwill); 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.).

Orizon will be irreparably harmed without injunctive relief here because the damages resulting from Defendants' continued unlawful conduct – including the loss of trade secrets, confidential information, business opportunities, and customer relationships – is not readily ascertainable. *Edelman Fin. Engines, LLC v. Harpsoe*, 2019 WL 329547, at *3 (D. Kan. 2019) ("And because defendants' actions will continue to affect the goodwill and relationships between plaintiff and its customers, monetary relief will not compensate plaintiff adequately for the harm it will sustain."). Moreover, the threat of irreparable harm is imminent because Crumley's duties and responsibilities with Valence are identical to the duties and responsibilities that he had with Orizon. *Universal Engraving, Inc.*, 519 F. Supp. 2d at 1148 (finding irreparable where former employee who had knowledge of employer's trade secrets and resigned to work for competitor in same type of position).

### III. The Actual and Irreparable Harm to Plaintiffs If the Motion Is Denied Outweighs any Potential Harm to Defendants.

The balance of harms with respect to Crumley is discussed above. As for Valence, any harm to is negligible in comparison to the harm to Orizon.

### IV. The Public Interest Will Not Be Harmed.

The public interest will not be adversely affected by the entry of a temporary restraining order in this matter. To the contrary, the public interest is served in upholding enforceable contracts, protecting confidential and proprietary information, and preventing unfair competition.

*See Fireworks Spectacular, Inc.*, 86 F.Supp.2d at 1109; *Chem-Trol, Inc. v. Christensen*, 2009 WL 331625, at *6 (D. Kan. Feb. 10, 2009) ("[T]he public interest is served where unfair competition is restrained.").

Injunctive relief is in the public interest because it is necessary to uphold the enforceable contracts, protect Orizon's confidential and proprietary information, and preventing unfair competition.

WHEREFORE, Plaintiffs respectfully request that the Court grant its Motion for Temporary Restraining Order and Preliminary Injunction.

Respectfully submitted,

*/s/ James C. Sullivan*
James C. Sullivan     KS FED # 70453
Gregory D. Ballew    KS Bar No. 17214
**FISHER & PHILLIPS LLP**
4622 Pennsylvania Ave., Suite 910
Kansas City, MO  64112
TEL: (816) 842-8770
FAX: (816) 842-8767
Email:  jsullivan@fisherphillips.com

ATTORNEYS FOR PLAINTIFFS

FP 46400131.2