IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ORIZON AEROSTRUCTURES, LLC, and
ORIZON MANAGEMENT INCENTIVE,
LLC,

   *Plaintiff,*

vs.

   Case No.  2:23-cv-02069-EFM

JUSTIN J. CRUMLEY, VALENCE
SURFACE TECHNOLOGIES, LLC, and
CHROME PLUS INTERNATIONAL, LLC,
d/b/a VALENCE SURFACE
TECHNOLOGIES,

   *Defendant.*

**MEMORANDUM AND ORDER**

Before the Court is Plaintiffs Orizon Aerostructures, LLC, ("Orizon")'s and Orizon Management Incentive, LLC, ("OMI")'s Motion for Preliminary Injunction to prevent Defendant Justin J. Crumley from working for Defendant Valence Surface Technologies, LLC ("Valence"). Because the Court finds *sua sponte* that summary judgment is appropriate as to Plaintiffs' Defend Trade Secrets Act ("DTSA") claim, and because following that decision the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state claims, the Court therefore dismisses the case in its entirety. Accordingly, Plaintiffs' Motion (Doc. 63) is denied as moot.

## I.     Factual and Procedural Background

Plaintiffs are an aerostructures manufacturing company, Orizon, and its great-grandparent company, OMI.[1] Orizon functions as a multi-tier aerostructures company, able to machine, process, and assemble parts. Charles Newell serves as the CEO of both Orizon and OMI. OMI's stated purpose is to attract and retain key management personnel by allowing them to own shares of Orizon, albeit indirectly.

Crumley had been employed by Orizon from 2016 through January 27, 2023, first to oversee building a processing facility and then as the building's manager. In 2018, Crumley was invited to purchase shares of OMI for $5,000. To obtain his membership in OMI, Crumley signed a Non-Compete Agreement (the "Agreement"), restricting him from working for any business that "manufactures, markets, sells or distributes aerospace products," or "otherwise competes with the business conducted by Orizon."

After leaving Orizon, Crumley was hired by Valence as the general manager of its parts-processing facility. Valence is a service provider in the aerostructures industry which specializes in processing parts for higher tier companies. Plaintiffs soon brought suit, claiming that Crumley had violated the Agreement. In total, Plaintiffs brought seven claims against Defendants—six state claims and one for violation of the Defend Trade Secrets Act, upon which Plaintiffs relied for federal question jurisdiction. At the same time, Plaintiffs requested a temporary restraining order to prevent Crumley from working for Valence.

---

[1] OMI is a 10% owner of Orizon's owners' owner. OMI's relationship to Orizon was the subject of much confusion and ensuing discussion at the preliminary injunction hearing on May 2, 2023.

The Court declined to issue a temporary restraining order, leading Plaintiffs to file the present Motion for a Preliminary Injunction. After the Court scheduled a hearing but before the hearing took place, Defendants filed a motion for partial summary judgment, arguing that because discovery had not revealed any trade secrets, Plaintiffs could not prevail on their DTSA claim. As noted above, this Court's jurisdiction over Plaintiffs' entire case rested on federal question jurisdiction under 28 U.S.C. § 1331 for its DTSA claim. Defendants further requested that—after granting them summary judgment on Plaintiffs' sole federal claim—the Court decline to exercise supplemental jurisdiction over Plaintiffs' state law claims, thus dismissing the entire case for lack of jurisdiction. The Court denied Defendants' motion at that time because the discovery period prior to the preliminary injunction hearing had not yet completed. The Court noted that the hearing would allow Plaintiffs the opportunity to demonstrate what trade secrets were at issue.

On May 2, 2023, the Court held a hearing on Plaintiffs' present Motion. At the hearing, the Court instructed the parties to address two issues in particular: (1) whether Plaintiffs had any "trade secrets" as defined by the DTSA and (2) whether Crumley's employment at Valence caused unfair competition. Regarding the first, Newell testified that Orizon has many "unique" processes, layouts, marketing strategies, and techniques. Specifically, Newell alluded to the following as trade secrets: (1) the structure, organization, business initiatives, goals, and very existence of OMI;[2] (2) the use of augmented reality in de-masking parts; (3) the process by which Orizon hangs parts during conductivity testing;[3] (4) Orizon's use of "statistical process controls" and "scoreboarding" techniques provided by Birst, a third-party business cloud software; and (5)

---

[2] Newell later backtracked, stating that OMI is not a trade secret.

[3] Newell clarified that he was not sure if this qualified as a trade secret, but he personally thinks that Orizon employs different processes than its competitors.

Orizon's business goals and initiatives; (6) use of 3D printing; (7) Orizon's "way to go to market" as a multi-layer aerostructures company; (8) the layout of Orizon's facility;[4] (9) racking techniques; (10) masking techniques; (11) Orizon's customers; (12) pricing; (13) Orizon's "lines of machining"; and (14) Orizon's further undefined processes.

Because the hearing ran longer than anticipated, the Court instructed the parties to submit written closing arguments. In their closing argument, Plaintiffs refer to only the first five "trade secrets" as supporting their DTSA claim. Defendants once again argue that Plaintiffs fail to identify any trade secrets as defined by the DTSA.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[5] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[6] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[7] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[8] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—

---

[4] Newell also testified that this was not a trade secret.

[5] Fed. R. Civ. P. 56(a).

[6] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (citing *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[7] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[8] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

conclusory allegations alone cannot survive a motion for summary judgment.[9] The court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[10]

Generally, "the practice of granting summary judgment *sua sponte* is not favored."[11] This is because "[a] party is procedurally prejudiced if it is surprised by the district court's action and that surprise results in the party's failure to present evidence in support of its position."[12] Nevertheless, courts "may grant summary judgment sua sponte so long as the losing party was on notice that it had to come forward with all of its evidence."[13]

### III.  Analysis

**A.  Plaintiffs' DTSA claim**

Plaintiffs rely on their claim for violation of the DTSA to establish federal question jurisdiction under 28 U.S.C. § 1331, with supplemental jurisdiction under § 1367 extending to their state law claims. Under the DTSA, "[a]n owner of a trade secret that is misappropriated may bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."[14] The DTSA defines a "trade secret" as information for which the owner takes "reasonable measures to keep . . . secret" and which "derives independent economic value, actual or potential, from not being generally known to, and not being readily

---

[9] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

[10] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

[11] *A.M. v. Holmes*, 830 F.3d 1123, 1136 (10th Cir. 2016) (further citation and quotations omitted).

[12] *Kannady v. City of Kiowa*, 590 F.3d 1161, 1170 (10th Cir. 2010) (quoting *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 139 (2d Cir. 2000)).

[13] *Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 892 (10th Cir. 1997) (cleaned up).

[14] 18 U.S.C. § 1836(b)(1).

ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."[15]

To establish a claim under the DTSA, "a plaintiff must show: (1) the existence of a trade secret; (2) the acquisition, use, or disclosure of the trade secret without consent; and (3) that the individual acquiring, using, or disclosing the trade secret knew or should have known the trade secret was acquired by improper means."[16] The plaintiff must also show that the trade secret was in use or intended for use in interstate commerce.[17] Even though "[t]he existence of a trade secret is a question for the trier of fact,"[18] the burden remains on the plaintiff to produce "evidence showing that the information alleged to be a trade secret meets the definition."[19] The plaintiff cannot meet this burden through general allegations, but rather "must describe the subject matter of its alleged trade secrets in sufficient detail to establish each element of a trade secret."[20] Thus, a "plaintiff's sweeping arguments, conclusory assertions, indefinite descriptions, and unspecific evidence" are insufficient to establish a trade secret under the DTSA.[21]

Here, none of Orizon's proffered proprietary information meets the definition of "trade secret" under the DTSA. To the extent Orizon's unique processes have value, they are not secret. To the extent they are not widely known, Plaintiffs have offered no evidence that these processes

---

[15] 18 U.S.C. § 1839(3).

[16] *API Americas Inc. v. Miller*, 380 F. Supp. 3d 1141, 1148 (D. Kan. 2019); *see also* 18 U.S.C. § 1836(b)(1).

[17] *See* § 1836(b)(1).

[18] *Dodson Int'l Parts, Inc. v. Altendorf*, 347 F. Supp. 2d 997, 1010 (D. Kan. 2004).

[19] *Assessment Techs. Inst., LLC v. Parkes*, 588 F. Supp. 3d 1178, 1211 (D. Kan. 2022).

[20] *AgJunction LLC v. Agrian Inc.*, 2014 WL 3661108, at *3 (D. Kan. 2014).

[21] *Dodson Int'l Parts v. Altendorf*, 2005 WL 475363, at *3 (D. Kan. 2005); *see also AgJunction*, 2014 WL 3661108, at *4 ("Reluctance to be specific is understandable; the more precise the claim, the more a party does to tip off a business rival to where the real secrets lie and where the rival's own development efforts should be focused. Still, the plaintiff must make a serious effort to identify its trade secrets or the court cannot do its job.") (further citation and quotations omitted).

are not readily ascertainable by others in the aerostructures industry. And finally, to the extent they are secret and not readily ascertainable, Plaintiffs fail to offer evidence that those "secrets" possess independent economic value.

The undisputed evidence offered at the hearing establishes that third party consultants and vendors were involved in creating or providing the processes involving 3D printing, scorekeeping and statistical process controls, use of augmented reality, racking techniques, and lines of machining. Because these processes stem from third parties and there is no evidence of exclusivity or confidentiality between those parties and Orizon, it appears that these processes are readily ascertainable. Orizon has offered no evidence to the contrary, just as it has failed to offer evidence that its conductivity testing hanging techniques are not readily ascertainable. Likewise, Orizon's masking technique is the subject of a published patent application, and thus no longer secret.

As far as OMI itself, Plaintiffs attached OMI's operating agreement to both its original Complaint on February 21, 2023, and its Amended Complaint on April 24, 2023, without sealing the document, thereby public disclosing OMI's purpose and structure. The paint drying time limits which Newell highly prizes were advertised by Orizon to an industry symposium along with the experiment's design, testing specifics, and the outcomes. Even though he stated that "almost everyone" would sign nondisclosure agreements when given a tour of Orizon's facility, Newell admitted that Orizon's layout was not a trade secret. And the assertion that Orizon's marketing itself as an integrated aerostructures company constitutes a "secret" is an oxymoron.

As to Orizon's customers, it appears undisputed that they are no secret and Plaintiffs make no further contention to the contrary.[22] Similarly, Crumley testified at the hearing that Orizon's

---

[22] *See Dodson Int'l Parts*, 347 F. Supp. 2d at 1011 ("It is the tangible customer lists and notes, as opposed to the customers themselves, that are the protected trade secrets. Customer lists containing merely public information

current prices often change based on inflation or other costs, meaning he has no knowledge of what they might be at present. Plaintiffs do not address either of these alleged trade secrets in their closing argument, appearing to waive the issues.

Although Newell asserts that Orizon employs its "trade secrets" in unique ways, that is nothing more than an indefinite description insufficient to demonstrate the existence of a trade secret under the DTSA. The same fault applies to Orizon's "environment," intranet, and other "unique processes."

Plaintiffs also claim that Orizon's "business initiatives and goals," of which Crumley was aware, constitute trade secrets. However, Plaintiffs present no evidence that these items possess independent economic value. Furthermore, Plaintiffs fail to present any evidence of the second element of a DTSA claim, namely that Crumley has used or disclosed this information to Valence.

In sum, Plaintiffs have failed to show that there is a genuine issue of material fact as to whether they have any trade secrets and whether Crumley has disclosed that information to Valence. Therefore, the Court grants summary judgment to Defendants on Plaintiffs' DTSA claim.

Even though the Court issues this decision sua sponte, Plaintiffs will suffer no procedural prejudice. In its order denying Defendants' motion for summary judgment—a motion which first raised the issue of Plaintiffs' failure to identify trade secrets under the DTSA—the Court noted that granting summary judgment was premature in that discovery for the preliminary hearing had not concluded. It then stated that Plaintiffs would have their chance to put on evidence of their trade secrets at the preliminary injunction hearing. Furthermore, at the start of the preliminary

---

that could be easily compiled by third parties will not be protected as trade secrets.") (further citation and quotations omitted).

hearing, the Court explicitly informed the parties that one of the primary issues was whether Orizon had any trade secrets under the DTSA. Therefore, Plaintiffs were put on notice—twice—that they had to produce evidence establishing Orizon's trade secrets as per the DTSA's definition. They did not. Accordingly, the Court may grant summary judgment to Defendants *sua sponte* without procedurally prejudicing Plaintiffs.

## B. Plaintiffs' remaining state law claims

Having granted summary judgment to Defendants on Plaintiffs' sole federal claim, and seeing no other basis for federal jurisdiction, the Court declines to exercise supplemental jurisdiction on Plaintiffs' state law claims.[23] Thus, the Court dismisses Plaintiffs' case for lack of subject matter jurisdiction under Fed. R. Civ. Pr. 12(b)(1).

**IT IS THEREFORE ORDERED** that the Court *sua sponte* grants Defendant summary judgment on Plaintiffs' claim for violation of the DTSA.

**IT IS FURTHER ORDERED** that Plaintiffs' remaining state law claims are dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Preliminary Injunction (Doc. 63) is **DENIED** as moot.

---

[23] *See Hansen v. Salt Lake City Corp.*, 764 F. App'x 770, 773 (10th Cir. 2019) ("It is well established that when all federal claims have been dismissed, as is the case here, the court may, and usually should, decline to exercise supplemental jurisdiction over any remaining state claims.") (quoting *VR Acquisitions, LLC v. Wasatch Cnty.*, 853 F.3d 1142, 1150 (10th Cir. 2017)) (further citations, quotations, and brackets omitted).

**IT IS SO ORDERED.**

Dated this 11th day of May, 2023.

This case is closed.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE