## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ORIZON AEROSTRUCTURES, LLC, and
ORIZON MANAGEMENT INCENTIVE,
LLC,

        *Plaintiff,*

 vs.

       Case No.  2:23-cv-02069-EFM-KGG

JUSTIN J. CRUMLEY, VALENCE
SURFACE TECHNOLOGIES, LLC, and
CHROME PLUS INTERNATIONAL, LLC,
d/b/a VALENCE SURFACE
TECHNOLOGIES,

        *Defendants.*

## MEMORANDUM AND ORDER

Before the Court is Plaintiffs Orizon Aerostructures, LLC, ("Orizon")'s and Orizon Management Incentive, LLC ("OMI")'s Motion to Redact Preliminary Injunction Hearing Transcript (Doc. 96). In their Motion, Plaintiffs seek to redact multiple pages of the hearing's transcript, purportedly laying out confidential and proprietary business information. Because the Court finds that most of what Plaintiffs seek to redact is neither confidential nor proprietary, the Court denies Plaintiffs' Motion in part. It grants the Motion in part as to details of Orizon's ownership structure, as that information is undisputedly proprietary and confidential business information.

## I.      Factual and Procedural Background

Orizon functions as a multi-tier aerostructures company, able to machine, process, and assemble parts.  Charles Newell serves as the CEO of both Orizon and OMI.  OMI's stated purpose is to attract and retain key management personnel by allowing them to own shares of Orizon, albeit indirectly.

Defendant Justin Crumley had been employed by Orizon from 2016 through January 27, 2023, first to oversee building a processing facility and then as the facility's manager.  In 2018, Crumley was invited to purchase shares of OMI for $5,000.  To obtain his membership in OMI, Crumley signed a Non-Compete Agreement (the "Agreement"), restricting him from working for any business that "manufactures, markets, sells or distributes aerospace products," or "otherwise competes with the business conducted by Orizon."

After leaving Orizon, Crumley was hired by Defendant Valence Surface Technologies, LLC ("Valence") as the general manager of its parts-processing facility. Valence is a service provider in the aerostructures industry which specializes in processing parts for higher tier companies.  Plaintiffs soon brought suit, claiming that Crumley had violated the Agreement.  In total, Plaintiffs brought seven claims against Defendants—six state claims and one for violation of the Defend Trade Secrets Act, upon which Plaintiffs relied for federal question jurisdiction.  At the same time, Plaintiffs requested a temporary restraining order to prevent Crumley from working for Valence.

The Court declined to issue a temporary restraining order, leading Plaintiffs to file a motion for a preliminary injunction.  After the Court scheduled a hearing but before the hearing took place, Defendants filed a motion for partial summary judgment, arguing that because discovery had not revealed any trade secrets, Plaintiffs could not prevail on their DTSA claim.  As noted above, this

Court's jurisdiction over Plaintiffs' entire case rested on federal question jurisdiction under 28 U.S.C. § 1331 for its DTSA claim.  Defendants requested that the Court grant them judgment on Plaintiff's DTSA claim and afterward decline to exercise supplemental jurisdiction over Plaintiffs' state law claims, thus dismissing the entire case.  The Court denied Defendants' motion at that time because the discovery period prior to the preliminary injunction hearing had not yet completed.  The Court noted that the hearing would allow Plaintiffs the opportunity to demonstrate just what trade secrets, if any, existed.

On May 2, 2023, the Court held a hearing on Plaintiffs' present Motion.  At the hearing, the Court instructed the parties to address two issues in particular: (1) whether Plaintiffs had any "trade secrets" as defined by the DTSA and (2) whether Crumley's employment at Valence caused unfair competition.  Regarding the first, Newell testified that Orizon has many "unique" processes, layouts, marketing strategies, and techniques.  Specifically, Newell alluded to the following as trade secrets: (1) the structure, organization, business initiatives, goals, and very existence of OMI;[1] (2) the use of augmented reality in de-masking parts; (3) the process by which Orizon hangs parts during conductivity testing;[2] (4) Orizon's use of "statistical process controls" and "scoreboarding" techniques provided by Birst, a third-party business cloud software; (5) Orizon's business goals and initiatives; (6) use of 3D printing; (7) Orizon's "way to go to market" as a multi-layer aerostructures company; (8) the layout of Orizon's facility;[3] (9) racking techniques;

---

[1] Newell later backtracked on this statement, confirming that OMI is not a trade secret.

[2] Newell clarified that he was not sure if this qualified as a trade secret, but he personally thinks that Orizon employs different processes than its competitors.

[3] Newell also testified that this was not a trade secret.

(10) masking techniques; (11) Orizon's customers; (12) pricing; (13) Orizon's "lines of machining"; and (14) Orizon's further undefined processes.

During the hearing, which was available for public viewing, Plaintiffs did not take any steps to protect or seal the information presented. After receiving written closing arguments from the parties, the Court entered its ruling. The Court granted Defendants summary judgment sua sponte on Plaintiffs' DTSA claim, finding that Plaintiffs had failed to identify any trade secrets under the DTSA's relevant definition.[4] The Court declined to exercise jurisdiction over Plaintiffs' remaining state law claims. Now, Plaintiffs bring the present Motion, seeking to redact portions of the transcript from the May 2 hearing.

## II.    Legal Standard

Courts have an inherent responsibility to safeguard the public's "common-law right of access to judicial records."[5] This right, while assumed, "is not absolute."[6] Rather, the Court has "discretionary power to control and seal, if necessary, records and files in its possession."[7] In exercising this discretion, the Court must consider whether "the public's right of access is outweighed by competing interests."[8] The party seeking to seal portions of the records must "articulate specific facts to establish a public or private harm from opening the documents to public

---

[4] Plaintiffs have a pending motion to clarify whether this Court also entered summary judgment on Defendants' counterclaims. Given that Defendants have yet to respond to this motion and their deadline to do so has not yet expired, the Court will not address that issue at this time.

[5] *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007).

[6] *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978).

[7] *Crystal Grower's Corp. v. Dobbins*, 616 F.2d 458, 461 (10th Cir. 1980).

[8] *United States v. Apperson*, 642 F. App'x 892, 899 (10th Cir. 2016) (quotation and citation omitted); *see also, e.g.*, *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1246 n.14 (10th Cir. 2017) ("Because these two documents contain proprietary business information not only of Defendants but of non-parties, comprise a small portion of the overall record, and play no role in our resolution of this appeal, we grant the motion to seal as to these two documents.").

-4-

view."[9]   This Court has previously held that a movant's interest in preserving "sensitive and confidential business information, including information about marketing and sales strategies, sales forecasting, pricing, contract negotiations, rebate offers, and product development" may outweigh the public's interest in accessing court records.[10]

### III.    Analysis

Plaintiffs request that the Court redact certain portions of the transcript from the hearing on May 2, 2023.   While Plaintiffs construct their request now as dealing with "confidential, proprietary, or sensitive business information," instead of "trade secrets," the underlying facts have not changed.   For most of the requested redactions, the information sought to be protected is neither confidential nor proprietary.   Plaintiffs' characterization of the information as such does not make it so.

A helpful example may be found in *Assessment Techs. Inst., L.L.C. v. Parkes*,[11] where this Court granted in part the plaintiff's motion to seal portions of a hearing transcript.[12]   The hearing testimony sealed included "verbatim recitations of [plaintiff]'s test questions and answers, and references to [defendant's] video transcripts and 'Level Up RN' materials that are likely substantially similar to [plaintiff]'s test material."[13]   Furthermore, the information was the subject of documents that had already been filed under seal and the parties had already agreed to redacting

---

[9] *Lawson v. Spirit Aerosystems, Inc.*, 2020 WL 7626514, at *1 (D. Kan. 2020) (further citations omitted).

[10] *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2020 WL 7396915, at *10 (D. Kan. 2020).

[11] 2020 WL 1433470 (D. Kan. 2020).

[12] *See id.* at *1.

[13] *Id.* at *2

the information.[14]  Because of the specificity of the information, the fact the parties had already striven to keep it confidential, and the undisputed characterization of that information as "trade secrets," the Court granted the motion to seal.[15]  In contrast, the Court denied the plaintiff's motion regarding testimony that contained neither trade secrets nor confidential business information.[16]

Defendants also argue, citing *Fish v. Kobach*,[17] that Plaintiffs have effectively waived any right to characterize information filed in this case without protective measures as "confidential." In *Fish*, this Court noted that no party could seriously doubt that a transcript of a deposition testimony was available to the public, even though it had been previously subject to a protective order.[18]  This was because the parties had attached extensive excerpts from the deposition to motions for summary judgment without sealing those exhibits.[19]  Thus, those excerpts unquestionably became part of the public record.[20]  Defendants infer from this conclusion that filing information in court without seeking to protect that information waives any right the party may have to protect that information later.

Defendants' reasoning is sound.  Matters that are part of the public record are no longer confidential.  Thus, a party cannot establish that harm will result from that information being available elsewhere in the record as well.  The same is true for information otherwise publicly available.

---

[14] *Id.*

[15] *Id.*

[16] *See id.* at *3.

[17] 2018 WL 5295891 (D. Kan. 2018).

[18] *Id.* at 4.

[19] *Id.*

[20] *Id.*

The Court applied this principle in its previous order finding that Plaintiffs had failed to provide evidence of any trade secrets. In large part, Plaintiffs seek to redact the same information from the transcript on which they relied to show that Orizon had trade secrets. In its analysis of whether Plaintiffs had identified any trade secrets, the Court stated:

> The undisputed evidence offered at the hearing establishes that third party consultants and vendors were involved in creating or providing the processes involving 3D printing, scorekeeping and statistical process controls, use of augmented reality, racking techniques, and lines of machining. Because these processes stem from third parties and there is no evidence of exclusivity or confidentiality between those parties and Orizon, it appears that these processes are readily ascertainable. Orizon has offered no evidence to the contrary, just as it has failed to offer evidence that its conductivity testing hanging techniques are not readily ascertainable. Likewise, Orizon's masking technique is the subject of a published patent application, and thus no longer secret.
>
> As far as OMI itself, Plaintiffs attached OMI's operating agreement to both its original Complaint on February 21, 2023, and its Amended Complaint on April 24, 2023, without sealing the document, thereby public disclosing OMI's purpose and structure. The paint drying time limits which Newell highly prizes were advertised by Orizon to an industry symposium along with the experiment's design, testing specifics, and the outcomes. Even though he stated that "almost everyone" would sign nondisclosure agreements when given a tour of Orizon's facility, Newell admitted that Orizon's layout was not a trade secret. And the assertion that Orizon's marketing itself as an integrated aerostructures company constitutes a "secret" is an oxymoron.
>
> As to Orizon's customers, it appears undisputed that they are no secret and Plaintiffs make no further contention to the contrary. Similarly, Crumley testified at the hearing that Orizon's current prices as they often change based on inflation or other costs, meaning he has no knowledge of what they might be at present. Plaintiffs do not address either of these alleged trade secrets in their closing argument, appearing to waive the issues.
>
> Although Newell asserts that Orizon employs its "trade secrets" in unique ways, that is nothing more than an indefinite description insufficient to demonstrate the existence of a trade secret under the DTSA. The same fault applies to Orizon's "environment," intranet, and other "unique processes."[21]

---

[21] Doc. 86 at 7–8.

To be clear, the Court does not conflate the two analyses. Whether information is a trade secret requires a different standard than whether it is merely confidential business information. However, Plaintiffs' present request fails for much the same reasons it failed to identify any trade secrets. Plaintiffs simply do not seek to protect confidential information but rather information that is publicly available already.

To the extent Plaintiffs seek to protect information not previously characterized as "trade secrets," they have already publicly filed that information in their Amended Complaint. This includes: (1) the bid price from ATL Partners' attempt to purchase Orizon; (2) Crumley's joinder of OMI and capital contribution; and (3) information available to OMI members. Finally, Plaintiffs seek to redact vaguely worded and unhelpful language on page 94 of the transcript without even attempting to identify the harm that would result from its disclosure to the public. In short, Plaintiffs have failed to articulate any specific facts showing that harm would result from allowing these portions of the transcript to remain unsealed.

Plaintiffs argue that the Court should grant their request because it has previously entered a protective order in this case and has allowed other exhibits to be sealed which contain "the same or related proprietary business information." First, the Court notes that in its protective order, it explicitly excluded from its definition of "Confidential Information" any "[i]nformation or documents that are available to the public." Such information is exactly what is at issue here. Moreover, "[t]he fact that the exhibits are 'confidential' within the meaning of the parties' protective order has no bearing on whether those exhibits should be sealed in the record."[22]

---

[22] *New Jersey and its Div. of Inv. v. Sprint Corp.*, 2010 WL 5416837, at *1 (D. Kan. 2010).

Second, the sealed exhibits which Plaintiffs rely on to support sealing portions of the hearing's transcript do not—for the most part—contain any of the information which Plaintiffs now seek to protect.  And the decision to seal many of those documents was made at the time with the benefit of the doubt given to Plaintiffs that they could prove the existence of confidential trade secrets.  The Court has realized since then that Plaintiffs' claimed secrets are anything but.

Of the sealed exhibits Plaintiffs rely on for this argument, most do not support Plaintiffs' requested redactions.  Doc. 64-3 contains Orizon's interrogatory answers, listing both Orizon's approvals and its revenue and net sales numbers.  As revealed at the hearing, Orizon's approvals are not confidential, as it advertises them openly to its customers.  And Orizon's internal financials were never mentioned during the hearing, much less discussed in detail.  Docs. 64-11 and 64-16 are letters from Valence offering Crumley his position there.[23]  They contain nothing which could harm Plaintiffs, and Plaintiffs have articulated no specific facts to the contrary.[24]  Doc. 70-1 is a deposition of Charles Newell containing the same information the Court later realized to *not* be confidential for the reasons quoted from its order above.  Doc. 70-3 is a presentation to OMI members containing information that may be both confidential and proprietary—but none of that was disclosed at the hearing.  The same goes for Doc. 64-6.  Therefore, the fact that these exhibits are already sealed is unhelpful to Plaintiffs' present Motion.

Contrary to most of Plaintiffs' requested redactions, the Court recognizes that several of those between pages 30 and 50 have merit.  These segments of the transcript discuss Orizon's ownership structure, information contained within sealed exhibits in this case, Docs. 31-1, 31-2,

---

[23] It was Defendants who filed the motion to seal Docs. 64-11 and 64-16.

[24] It was Defendants who originally moved to seal these exhibits.

and 70-14.  Defendants do not object to Plaintiffs redacting this information.  The Court noted the intricacy of Orizon's business relationships in its prior order and notes here Plaintiffs took no steps to protect this information at the hearing itself.  Nevertheless, given that Orizon's ownership structure is undisputedly proprietary business information, has already been the subject of sealed exhibits, and played little role in the Court's ultimate decision, the Court grants Plaintiffs request to seal the portions of the record at 30:11-19, 31:14-25, 32:1-14, 36:16-25, 37:1-24, 38:4-25, 39:1-25, 40:1-25, 42:1-25, 43:1-13, 44:20-25, 45:1-25, 46:1-25, 47:1-25, 49:11-24, and 50:4-14.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion is **GRANTED in part** as to the requested redactions at 30:11-19, 31:14-25, 32:1-14, 36:16-25, 37:1-24, 38:4-25, 39:1-25, 40:1-25, 42:1-25, 43:1-13, 44:20-25, 45:1-25, 46:1-25, 47:1-25, 49:11-24, and 50:4-14.  Plaintiffs shall file a redacted version of the transcript within ten days of this order being filed.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion is **DENIED in part** as to all other requested redactions.

**IT IS SO ORDERED.**

Dated this 7th day of August, 2023.

Eric F. Melgren

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE